## BARRETT v. OREGON RY. & NAV. CO.

*(District Court, D. Oregon. December 23, 1884.)*

LIGHTERAGE—CHARTERER "TO PAY," NOT "TO PROVIDE."

The bark Carrie Winslow was chartered to carry a cargo from New York to Portland for a lump sum; the charterer "to pay" for the necessary lighterage between Astoria and the port of discharge. *Held,* that the charterer was not bound "to furnish" or "provide" the lighterage, but only "to pay" for it; that the contract of the master being to bring the vessel with her cargo to Portland, he was bound to provide and employ the means necessary and appropriate to that end.

Libel for Demurrage.

*William H. Effinger,* for libelant.

*Cyrus A. Dolph,* for defendant.

DEADY, J. This suit is brought by the master of the bark Carrie Winslow to recover $1,620 demurrage. It is alleged in the libel, that in January, 1883, the vessel was chartered by the defendant at New York to carry a cargo of railway iron and material from that port to Portland, Oregon, for the sum of $14,500, and that among other things the charter-party provided that the vessel should be discharged "at Portland" with "dispatch," and that for each day's detention thereof caused by the default of the defendant, Sundays and legal holidays excepted, it should pay $90 demurrage; and that "lighterage, if any, from Astoria to Portland, to be paid by the charterers, but no more cargo to be lightered than is necessary for the ship to proceed from said port of Astoria to Portland with safety;" that the vessel arrived at Astoria on August 5, 1884, from whence, owing to the stage of the water in the river, she could not be taken to Portland without being lightened; that the libelant applied to the defendant for lighterage, which it failed and refused to furnish for 18 days, although it had the means of doing so, whereby the vessel was detained at Astoria and prevented from discharging her cargo for that period, within the meaning and contemplation of the charter-party. In the second article of the libel it is alleged that the defendant, at the making of the charter-party, well knew that the vessel "would require lighterage at Astoria in order to enable her to make the port of Portland;" that it was then and ever since "engaged in the towage and lighterage service between the ports of Astoria and Portland, and controlled and regulated the same almost exclusively;" and that said charter-party was entered into by the parties with the understanding

that "the facts" in said article stated were "the real facts," and that it was made with reference thereto. The defendant excepts to the libel, for that it does not appear therefrom that the libelant is entitled to the relief sought thereby; and that the second article thereof is impertinent.

On the argument of the exceptions counsel for libelant contended that it was the duty of the defendant, under the circumstances, "to furnish" the lighterage, and that the delay caused by its neglect or refusal to do so is in effect a delay or detention in discharging the cargo that entitles the libelant to demurrage therefor at the agreed rate; citing Abb. Shipp. (12th Ed.) 241, 243; Macl. Law Shipp. (1st Ed.) 522, 526; *Capper* v. *Wallace,* L. R. 5 Q. B. Div. 163, 166. But there is nothing in these authorities or the circumstances to warrant such a construction of the charter-party.

The defendant did not agree to pay for any detention of the vessel, however caused, after she left the port of New York until she reached Portland, the port of discharge. To this point the libelant undertook to bring his vessel and her cargo, with a full knowledge, as he alleges, of the character and means of the navigation on this side of Astoria. Neither did the defendant agree "to provide" or "furnish" lighterage, but only "to pay" for it if necessary. When he contracted to bring his vessel and cargo to Portland, the libelant thereby undertook to provide all the means necessary and appropriate to that end, and also to bear the expense of so doing, except as otherwise specially provided in the contract. Upon this point—that the defendant was only "to pay" for the necessary lighterage, and therefore the libelant was not excused from furnishing it—the language of the charter-party is plain, and the meaning and purport apparent. But the instrument also furnishes very strong confirmatory evidence of the correctness of this conclusion, in the special provision therein, that "no more cargo is to be lightered than necessary" to enable the vessel to proceed to Portland. Now, if the defendant was to furnish the means as well as "pay" for the lightening of the vessel, there was no conceivable necessity for this provision. For it goes without saying that it would not furnish any more lighterage than was necessary, and that if it did the libelant could not be injured thereby. But if the libelant was "to furnish" or "provide" the lighterage at the expense of the defendant, the latter might well seek to protect itself against imposition in this respect by the insertion of some such clause in the contract.

It may be admitted that the law would have construed the contract without this clause as only binding the defendant to pay for necessary lighterage; but, nevertheless, the insertion of it puts beyond question, what is otherwise not in doubt, that the parties contemplated that the libelant would furnish or provide, at the expense of the defendant, the lighterage necessary to enable him to perform his undertaking to bring the vessel to Portland for the discharge of her cargo. If the defendant had agreed "to pay" all pilotage incurred

by the vessel on the voyage, it might as well be held "to furnish" it also, as to furnish lighterage under this charter-party. Nor is it likely or reasonable that if the parties to this contract ever contemplated that the defendant was to provide or furnish the lighterage under any circumstances, as well as to pay for it, they would have omitted to· say it. An agreement to "furnish" lighterage may, under ordinary circumstances, be construed to include the necessary expense of so doing. But an agreement "to pay" for lighterage, in terms, no more includes the physical act of furnishing or providing the same, than the less does the greater or a part the whole.

*Keen* v. *Audenried,* 5 Ben. 535, is a case on all fours with this. A schooner was chartered to carry coals from Baltimore to Pawtucket, Rhode Island, the charterer to pay freight at a certain rate per ton, "with towage from Providence to Pawtucket." There was a delay in procuring towage at Providence, and the master of the schooner sued the charterer for demurrage, alleging that he was bound to furnish the towage, and was therefore responsible for the delay. But Mr. Justice BLATCHFORD, before whom the case was tried, construed the somewhat ambiguous phrase "with towage," as used in connection with the stipulation for the payment of freight, as binding the charterer "to pay" the cost of the towage, but not "to provide" it.

If the defendant, by reason of its employment, was under any legal obligation to furnish the libelant lighterage, which it failed to comply with, the libelant may sue it for the damage actually sustained in consequence of such breach of duty. But such suit, if maintainable, would have to be brought, not upon the charter-party or for the demurrage provided for therein, but on this legal obligation of the defendant to furnish lighterage to any vessel under like circumstances, and its failure to do so in this instance.

The exceptions to the libel are sustained, and the same dismissed.